IN THE UNITED STATES DISTRICT COURT
NORTHERN DISDTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Salena Boston, Jalisa Rhodes, )<br>Lutisha Martinez, and Lanette Washington, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>Micah Sierra 'Katt' Williams, Tatiana )<br>Smith and John Doe 1-15, )<br>)<br>Defendant. ) | **CIVIL FILE ACTION NO**.<br><u>1:23-CV-0752</u>_____ |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT MICAH "KATT" WILLIAMS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW SALENA BOSTON, JALISA RHODES, LUTISHA MARTINEZ, AND LANETTE WASHINGTON, plaintiffs in the above-styled action (herein collectively "Plaintiffs") through their undersigned counsel, and file Plaintiff's Brief in Opposition to Defendant Micah "Katt" Williams' Motion For Summary Judgment pursuant to Fed. R. Civ. P. Rule 56 and L.R. 56.1, demonstrating the Defendant has not provided any evidence beyond the Court's docket to support his Motion and should be denied based on the following:

1

# INTRODUCTION

This action is brought pursuant to the tort laws of Georgia based on claims of Assault pursuant to O.C.G.A. § 51-1-14, Battery pursuant to O.C.G.A. § 51-1-13, False Imprisonment, Intentional Infliction of Emotional Distress pursuant to 51-12-6 and punitive damages pursuant to O.C.G.A. § 51-12-5.1 against plaintiffs at the hands of and as a result of the conduct of Defendant Micah Sierra "Katt" Williams ("Defendant Williams"), and members of his entourage, including Tatianna Smith in Atlanta, Fulton County, Georgia. In Defendant Williams' continued efforts to prevent the merits of this case from being addressed, Defendant motioned this Court for summary judgment due to "lack of due diligence" in serving the Defendant after the statute of limitations ran, and plaintiffs "were not diligent in answering their discovery, thereby admitting the facts alleged in Defendant's Requests for Admission."

# STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. The court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When service and timeliness are in dispute, courts must consider whether the plaintiff

exercised due diligence and whether factual questions exist about those efforts. See *Scott v. State Farm Fire & Cas. Co.*, 2023 WL 2923066, at *3 (N.D. Ga. Apr. 12, 2023).

## ARGUMENT AND CITATION AUTHORITY

**I. Defendant asserts Plaintiffs' claims are time-barred because:**

(1) The statute of limitations began running on December 7, 2021 (date of Fulton County nolle prosequi dismissal of criminal charges).

(2) Plaintiffs filed suit on February 17, 2023, but failed to serve Defendant until after the limitations period expired.

(3) Plaintiffs failed to demonstrate reasonable diligence in effectuating service under Georgia law (citing *McFadden v. Brigham*, *Lipscomb v. Davis*, and *Mote v. State Farm*).

Defendant's motion rests in part on the contention that Plaintiffs' claims are untimely due to delayed service. However, this argument fails as a matter of law and fact. The record overwhelmingly demonstrates that Plaintiffs exercised diligent and continuous efforts to serve Defendants, one of whom is a celebrity defendant with no fixed residence, extensive travel schedules, and multiple layers of private security that actively hindered lawful service efforts. These circumstances support a finding of due diligence under O.C.G.A. § 9-11-4(c) and preclude summary judgment on statute of limitations grounds.

## II. The Statute of Limitations Was Tolled Under O.C.G.A. § 9-3-99 and This Action Was Filed Timely

The limitations period in this case was tolled until December 7, 2021, the date of disposition of Defendants' criminal indictments in Fulton County Superior Court (Indictment Nos. 16SC146946 and 17SC153303). See O.C.G.A. § 9-3-99 (tolling the statute of limitations for tort claims arising from criminal conduct until final disposition of related criminal charges). Plaintiffs filed the original action on January 21, 2022, within 45 days of the tolling period's end, and well within the applicable limitations period. The action was dismissed without prejudice on November 8, 2022. Plaintiffs then refiled this action on February 17, 2023, within the six-month period allowed by O.C.G.A. § 9-2-61. Thus, there is no dispute that Plaintiffs complied with both statutory tolling and renewal procedures.

### III. Plaintiffs Exercised Due Diligence in Effectuating Service

Defendant seeks summary judgment on grounds that service was not perfected within the statute of limitations period. This argument fails for three reasons:

**(A) Service Relates Back Under Georgia Law When Plaintiff Exercises Due Diligence**

Under O.C.G.A. § 9-11-4(c), service relates back to the date of filing if the plaintiff serves the defendant within five days of filing. When service is not made within five days, the action is not automatically barred if the plaintiff exercised "reasonable diligence" in attempting to serve. Whether due diligence exists is

4

generally a question of fact. *See Frazier v. HMZ Props., LLP,* 290 Ga. App. 728, 660 S.E.2d 778 (2008); *Powers v. Rawlings*, 277 Ga. App. 104, 625 S.E.2d 544 (2005). Summary judgment is inappropriate where factual disputes exist regarding a plaintiff's diligence in effecting service. See *Mitchell v. Gilbert*, 276 Ga. App. 522 (2005).

**(B) Plaintiffs' Service Efforts Were Persistent, Expansive, and Well-Documented**

From the outset, Plaintiffs pursued service at all known addresses for Defendants, including a former residence in Gainesville, Georgia; a gated home in Braselton, Georgia; and multiple concert venues across several states. Service efforts included:

(1) Sheriff's Attempt (Gwinnett County): Attempted service at 5343 Legends Drive; residents confirmed Defendants no longer resided there. *Hale Dec.* ¶14.

(2) Multiple Private Servers: Plaintiffs retained Muhsin Hassan and Grindstone Process Servers who attempted service on six occasions, each time being denied by concert venue security or residential gate access. *Hale Dec.* ¶¶17-19, 33-40.

(3) Service by U.S. Marshals: With this Court's authorization, the U.S. Marshals Service attempted service in Virginia, Arkansas, Louisiana, and Georgia,

including at concert venues and known former residences. They were repeatedly denied access by private security or local conditions. *Hale Dec.* ¶¶21-32

(4) On two separate occasions and in two different states, the U.S. Marshal's office made physical and telephonic contact with Defendant Williams' head of security, Isaac Douglas. The first occurrence was on February 11, 2022 in Richmond, Virginia at the Altria Theatre where the U.S. Marshal's Office's Receipt and Return states Defendant Katt Williams' "manager-head of security" Isaac Douglas was personally served on February 11, 2022. The second occurrence took place on February 22, 2022 where the serving U.S. Marshal sent an email to his office stating "the process is going to be returned unexecuted" even after he spoke with Defendant Katt Williams' head of security "Mr. Doug Isaac" over the telephone prior to his attempted service. See *Hale Dec.* ¶¶24, 30.

(5) Use of Private Investigator: Plaintiffs retained Tim Huhn of TM Huhn & Associates Inc. to locate Defendants' current residences, which was unsuccessful due to the Defendants' lack of a fixed address. *Hale Dec.* ¶41.

(6) Concert Surveillance and Service Attempt: Plaintiffs attended Defendant's February 2023 concert in Greenville, South Carolina, but were once again thwarted by venue security. *Hale Dec.* ¶¶38-39.

(7) After further motion practice and this Court's explicit threat of arrest for interference with service, Defendant Williams was finally served on December 29, 2023—nearly two years after the original action was filed. *Dkt. 10.*

(8) The total service-related expenses incurred by Plaintiffs exceed $2,991.44, demonstrating their serious and continuous effort to comply with the rules of service. *Hale Dec.* ¶44.

**(C) Defendant's Own Conduct and Celebrity Status Frustrated Service**

Defendant Katt Williams' status as a high-profile entertainer made him uniquely difficult to serve. Williams himself testified that he has been "bi-coastal for 16 years", with no fixed residential address. (*Hale Dec.* ¶45). His concerts involved high-security environments that obstructed access, and his security personnel actively blocked service attempts, including from both private process servers and U.S. Marshals.

Courts routinely recognize that where a defendant's lifestyle or deliberate conduct frustrates service, extended delays may still satisfy the diligence standard. See *Bailey v. Lawrence*, 251 Ga. App. 721 (2001); *Katz v. Robinson,* 199 Ga. App. 254, 404 S.E.2d 627 (1991). Here, the extensive record of evasive circumstances—including private security interference, gate access denial, and nationwide touring—makes clear that Plaintiffs are not at fault for any delay.

At a minimum, whether Plaintiffs acted with due diligence is a question of fact for the jury. See *Carter v. McKnight*, 260 Ga. App. 105 (2003) (reversing summary judgment where plaintiff made documented but unsuccessful service attempts). Given Plaintiffs' multiple attempts through law enforcement, federal marshals, private servers, and investigators, a jury could clearly find Plaintiffs exercised the requisite diligence.

### (D) Laches is Inapplicable in this Case

The February 17, 2023 renewal action was well within the tolled period, making any laches argument about delay meritless. Laches also fails due to Plaintiffs' diligent efforts to perfect service. These efforts confirm lack of unreasonable delay or prejudice to Defendants—two essential prongs required to establish laches. See *Walker v. Melton*, 227 Ga. App. 149, 151 (1997) ("Laches is not available where delay is explained or justifiable and where the opposing party suffers no prejudice.")

### V. Factual Admissions and Lack of Evidence of Injury

Defendant's attempt to rely on plaintiffs' purported failure to properly or timely respond to Defendant's Request for Admissions ("RFAs") and request this Court deem them "admitted material facts negating their claims," including:

(a) Denial of physical and emotional injury by Defendant.

(b) Admissions that Plaintiffs approached Defendant and initiated contact.

8

(c) No direct acts by Defendant to prevent their movement or direct violence. Defendant references these as admissions or uses Plaintiffs' purported failure to timely respond under Fed. R. Civ. P. 36(a)(3) to deem them admitted. Defendant's attempt to deem RFAs admitted through a summary judgment motion is procedurally improper under both Georgia and federal law. Requests for Admission, whether governed by O.C.G.A. § 9-11-36 or Federal Rule of Civil Procedure 36, require a party to seek a ruling on sufficiency through a timely, separate motion—not through a dispositive motion filed after the close of discovery. Georgia courts have clearly held that a party seeking to enforce deemed admissions must move during discovery to compel or deem responses insufficient. The Georgia Court of Appeals stated in *Porter v. Urban Residential Dev. Corp.*, 294 Ga. App. 828, 832 (2008), "[t]he proper method for challenging the sufficiency of a response or failure to respond to a request for admission is to file a motion with the trial court during the discovery period." Similarly, in *Smith v. Khan*, 289 Ga. App. 76, 79 (2007), the court held: "It is incumbent upon the party seeking to rely on admissions to obtain a ruling on the sufficiency of the responses before discovery closes." See also *SEC v. Happ*, 295 F. Supp. 2d 189, 191 (D. Conn. 2003); see also *Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 374 (S.D.N.Y. 1989). Attempting to bypass that requirement by raising the issue for the first time at the summary judgment stage is improper and prejudicial. See *Foretich v. Chung*, 151 F.R.D. 3, 5 (D.D.C. 1993) ("If plaintiff had serious

objections to the sufficiency of the answers, he should have filed a motion under Rule 36(a) before discovery closed.").

Because Defendant failed to file a timely motion to deem the RFAs admitted or to challenge the sufficiency of Plaintiff's responses before the close of discovery, the Court should decline to entertain this request as part of summary judgment proceedings. Both Georgia and federal law require strict procedural compliance when relying on RFAs, and absent proper handling, they may not be used to short-circuit the adjudication of disputed factual issues. To hold otherwise would effectively eviscerate the structured discovery process.

### VI. Defendant's Claim That Plaintiffs Cannot Prove Injury Is Refuted by Plaintiffs' Affidavits and Supporting Evidence

Defendant asserts that Plaintiffs cannot prove they sustained any physical or emotional injury as a result of the incident. This assertion is not only factually unsupported but directly contradicted by the sworn affidavits of all four Plaintiffs, each of whom has submitted detailed accounts of the assault, battery, and emotional trauma they experienced on the night in question.

(1) Salena Boston (Affidavit of Salena Boston, ¶¶ 17–29) Plaintiff Boston was the primary target of Defendant's aggression. After Defendant Williams verbally attacked her and instructed his entourage to "hit that bitch," Plaintiff Boston was tackled to the ground by Williams, struck in the head, kicked

in the back, and had her cellphone stolen. During the physical altercation, Defendant Williams attempted to grope her chest, ripped the crotch out of her romper, and made sexually humiliating remarks about her gender identity (¶18). Boston suffered injuries to her head, back, and knee (¶23), received medical treatment at Grady Hospital (¶24), and incurred $2,299.00 in medical expenses (¶24). She was also subjected to severe emotional trauma, including nightmares of being gang raped or shot, therapy for fear and anxiety, and lasting psychological injuries (¶¶26–29). These allegations support her claims for battery, intentional infliction of emotional distress, and punitive damages.

(2) Jalisa Rhodes (Affidavit of Jalisa Rhodes, ¶¶ 8–22) Plaintiff Rhodes was punched directly in the left eye by one of the women brought by Defendant (¶8) and suffered a fractured right index finger when one of Defendant's bodyguards forcibly took her cellphone (¶15). She received emergency treatment at Grady Hospital (¶22), incurred more than $2,250 in medical expenses (¶22), and her phone, which was forcibly taken, was worth $560.00 (¶21). Rhodes' affidavit plainly contradicts Defendant's claim that there is no evidence of injury and confirms liability for battery, theft, and emotional distress.

(3) Lutisha Martinez (Affidavit of Lutisha Martinez, ¶¶ 6–18) Plaintiff Martinez was pushed against a wall, had her shoes thrown by Defendant Williams (¶7), and was later physically assaulted by Defendant's security, who

11

threw her to the ground and forcibly took her phone from the vehicle (¶9). She suffered bruises to her left upper leg and back (¶15), lost her iPhone valued at $982.08 (¶17), and incurred $2,000.00 in lost wages due to missed work (¶18). Martinez has also been undergoing mental health treatment, suffers from recurrent nightmares, and relives the assault daily (¶16), supporting her claim for both economic and non-economic damages.

(4) Lanette Washington (Affidavit of Lanette Washington, ¶¶ 8–15) Plaintiff Washington was kicked in the right leg during the attack (¶8), resulting in pain and bruising (¶14), and was violently shoved by Defendant's security team (¶9). She also reported that Defendant Williams pointed a gun at the group while making threats (¶10). Lanette continues to experience ongoing emotional distress, including fear of retaliation and anxiety in crowds or around celebrities (¶15). These facts strongly support her claims of assault, emotional distress, and punitive damages.

In personal injury and tort actions, a plaintiff's own testimony, affidavit, or declaration, if based on personal knowledge and not conclusory, is sufficient to establish a triable issue regarding injury and damages. See *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1444 (11th Cir. 1991) (en banc); *Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002) (affidavit based on personal knowledge creates a factual issue precluding summary judgment).

Under Georgia law, it is well-settled that the testimony of an injured party alone may be sufficient to support a claim for compensatory damages for pain and suffering or emotional distress. See *West v. Nodvin*, 196 Ga. App. 825, 827 (1990); *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734, 737 (1982) ("a plaintiff's testimony alone, if believed, is sufficient to authorize damages for pain and suffering"). Moreover, Georgia courts have held that even minimal evidence of actual damages, such as medical bills or proof of medical treatment, is sufficient to defeat summary judgment in tort claims. See *Carter v. Bullock*, 316 Ga. App. 223, 224–25 (2012) (plaintiff's testimony and medical bills created jury question); *Larson v. Smith*, 194 Ga. App. 698, 699 (1990) (plaintiff's oral testimony regarding medical expenses and pain sufficient to survive summary judgment). Here, each Plaintiff has presented a sworn affidavit detailing their injuries, treatment received, and medical expenses incurred, supported by photographs, medical records, and documentation of lost wages and property loss. See Boston Aff. ¶¶23–25; Rhodes Aff. ¶¶20–22; Martinez Aff. ¶¶15–18; Washington Aff. ¶¶14–15. Such evidence is not only competent under *Fed. R. Civ. P. 56(c)*, but it also satisfies the Georgia evidentiary threshold for submission to a jury. See *Cooper v. Rosser*, 232 Ga. App. 601, 602 (1998) (plaintiff's testimony regarding injuries and costs from assault sufficient to submit to jury).

Additionally, Plaintiffs' emotional distress claims are independently supported by the egregious nature of the conduct, including physical violence, threats with a firearm, public humiliation, and sexual degradation, which Georgia courts recognize as adequate to support a claim for intentional infliction of emotional distress. See *Phillis v. City of Atlanta*, 743 F. Supp. 2d 1172, 1184–85 (N.D. Ga. 2010) (public humiliation and threats could support IIED claim); *Mandeville v. Sanders*, 318 Ga. App. 312, 317 (2012) (IIED claim sufficient where conduct was "extreme and outrageous").

Finally, punitive damages may be awarded under Georgia law where the evidence shows willful misconduct, malice, or wanton disregard for the rights of others. See *O.C.G.A. § 51-12-5.1(b)*; *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988). Defendant Williams' deliberate incitement of violence, physical attack, use of a firearm, and destruction of property are all properly considered by a jury under this standard.

## CONCLUSION

Defendant's motion for summary judgment should be denied. The evidence shows Plaintiffs pursued reasonable, continuous, and good-faith efforts to serve Defendants under extraordinarily difficult circumstances. The record demonstrates factual disputes concerning diligence and timeliness, rendering summary judgment inappropriate. Because Defendant failed to file a timely motion to deem the RFAs

admitted or to challenge the sufficiency of Plaintiff's responses before the close of discovery, the Court should decline to entertain this request as part of summary judgment proceedings, and there is an extensive evidentiary record which creates genuine issues of material fact regarding Plaintiffs' injuries and damages, thus precluding summary judgment.

Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety and allow this matter to proceed to trial on the merits, as summary judgment is not proper under Rule 56.

This the 5th day of August 2025.

**HALE LAW FIRM, P.C.**

**/s/LOLETHA DENISE HALE**
**LOLETHA DENISE HALE, ESQ.**
Georgia Bar No.  317523

Attorney for Plaintiffs
Post Office Box 793
Jonesboro, Georgia  30237
Ph: 678.610.0970
halelawfirmpc@yahoo.com

## LR 5.1 CERTIFICATION

The above-signed counsel certify that this document has been prepared with 14 point Times New Roman Font.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT MICAH "KATT" WILLIAMS' MOTION FOR SUMMARY JUDGMENT** upon opposing counsel via the CM/ECF system, and addressed as follows:

Gabe Banks, Esq.
100 Peachtree Street N.W.
Suite 2650
Atlanta, Georgia  30303
Gabe@banksweaver.com


This the  5th  day of August 2025.

                       **HALE LAW FIRM, P.C.**

                       _/s/LOLETHA DENISE HALE_____
                       Loletha Denise Hale, Esq.
                       Georgia Bar No.  317523
                       Post Office Box 793
                       Jonesboro, Georgia  30237
                       Ph: 678.610.0970
                       *Attorney for Plaintiffs*